# IN THE COURT OF APPEALS OF IOWA

No. 24-0185
Filed June 19, 2024

**IN THE INTEREST OF E.W.,**
**Minor Child,**

**D.W., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Polk County, Romonda Belcher, Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

S.P. DeVolder of The DeVolder Law Firm, P.L.L.C., Norwalk, and William L. Kutmus and Trever Hook of Kutmus, Pennington & Hook, P.C., West Des Moines, for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Nicole Garbis Nolan of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Ahlers, P.J., and Chicchelly and Buller, JJ.

**AHLERS, Presiding Judge.**

The juvenile court terminated the parental rights of the father to a six-year-old child. The mother's parental rights were not terminated, and she continues to have custody of the child.

The father appeals. He challenges the statutory grounds, argues termination is not in the child's best interests, and claims the juvenile court should have applied a permissive exception to forgo termination.

We conduct de novo review of orders terminating parental rights. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). Our review follows a three-step process that involves determining if a statutory ground for termination has been established, whether termination is in the child's best interests, and whether any permissive exceptions should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021).

The juvenile court found grounds authorizing termination satisfied under Iowa Code section 232.116(1)(d), (f), and (i) (2023). As the father's rights were terminated on multiple grounds, we affirm if any ground is supported by the record. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record."). We focus on paragraph (f), which authorizes termination when the child (1) is at least four years old, (2) has been adjudicated as in need of assistance, (3) has been removed from the parent's custody "for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days;" and (4) the child cannot be safely returned to the parent's

custody at the time of the termination hearing. Iowa Code § 232.116(1)(f); *see also In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (holding that "at the present time" means at the time of the termination hearing). The father only challenges the fourth element—whether the child could be safely returned to his custody at the time of the termination hearing.

We agree with the juvenile court that the child could not be safely returned to the father's custody. This case began after the child reported that the father had touched her genitals with his hand and tongue. "An investigation resulted in a founded report of child abuse based on the father placing his mouth on the child's genitals. The report of hand-to-genital contact was not confirmed." *In re E.W.*, No. 21-1736, 2022 WL 951082, at *1 (Iowa Ct. App. Mar. 30, 2022). The evidence supporting the founded report of child abuse resulted in the juvenile court adjudicating the child to be in need of assistance. The father appealed the adjudication, and this court found clear and convincing evidence supporting the child's adjudication, highlighting that the child's report of sexual abuse was supported by testimony from her mother that she had observed some redness to the child's genitals around the time the child reported the abuse and that the child had disclosed the abuse to her therapist as well. *Id.* at *3.

Yet the father has remained steadfast that he did not sexually abuse the child. At most, he endorsed as plausible a psychiatrist's theory that he sexually abused the child while blacked out from drinking, testifying that he "only came to the realization that it may have happened after talking with" the psychiatrist. When directly asked at the termination hearing, "So are you acknowledging that you did, in fact, sexually abuse [the child]?", the father responded that he was

"acknowledging the fact that [he]'s an alcoholic" and "seeking treatment for that."

Counsel sought clarification, asking "So you're not acknowledging that you

sexually abused [the child]?" And the father responded, "No, I have acknowledged

that I accepted the findings and that I'm moving forward to address them."

Throughout his testimony at the termination hearing the father reiterated only that

he "accepts the findings" without admitting to abusing the child, conceding only

that "it may have happened." Consistent with this theme, his trial counsel objected

to a question that suggested the father admitted to the abuse, claiming the

question misstated the record, as "he accepted the findings. He never admitted to

doing anything."

The therapist who was treating the father at the time of the termination

hearing testified that the father continues to deny that the sexual abuse ever

happened. She agreed that the father's refusal to admit he abused the child

impedes his progress in sexual-abuse therapy. She went on to explain that she

cannot provide him with sex-offender treatment until he accepts responsibility and

was only providing him with general therapy as a result. Without meaningfully

addressing his abuse of the child, the father remains a danger to her.

In addition to the danger the father continues to pose due to his failure to

meaningfully address his sexual abuse of the child, the father's poorly regulated

anger also endangers the child. When stressed, the father reacts aggressively. At

one point he was charged with harassment for his contact with the child's

babysitter. He left voicemails for the mother saying he wanted her to die and called

her a bitch. He has "cussed . . . out" the case manager and had his mother do the

same. The case manager explained that "[w]hen things don't go his way, he blows

up." The father behaved so aggressively toward the visitation supervisor that visits had to be held at the Iowa Department of Health and Human Services' offices instead of in the community. In fact, he "has been abusive to every professional that has attempted to work with him," according to the case manager. Despite this evidence, the father testified that he does not believe he should undergo any type of anger-management therapy.

For the above reasons, we conclude the child could not be safely returned to the father's custody. As a result, the State established a statutory ground for termination.

We next consider whether termination is in the child's best interests. When considering best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

After our de novo review of the record, we agree with the juvenile court that termination is in the child's best interests. To the extent the father argues that termination is not in the child's best interests based on his hired psychiatrist's opinion that daughters who grow up without father figures are at an increased risk of harm in adolescence, we agree with the juvenile court "that the harm caused by a father who sexually abuse[s] his daughter is greater." Contact with the father has had a negative impact on the child. For example, when the child would return

home from visits with the father, she would be emotionally dysregulated and would engage in physical manifestations of her abuse, which her mother and providers referred to as the "wiggles." After the paternal grandparents were no longer permitted to attend the father's visits with the child, the child began to express that she did not want to attend visits with the father. And, despite the father's contentions otherwise, he has never meaningfully addressed his sexual abuse of the child. He is not undergoing any sex offender treatment because he will not admit the abuse actually occurred. He is not safe to be around the child, and safety is of paramount concern with determining the child's best interests. *See In re J.E.*, 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J., concurring specially). The State established that termination is in the child's best interests.

Finally, we consider the father's contention that the juvenile court should have applied permissive exceptions to preclude termination in this instance. Application of a statutory exception to termination is permissive, not mandatory, and it is the parent's burden to prove that the exception should be applied. *In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018). The father cites the fact that the child remains in the mother's custody and his bond with the child as potential grounds to preclude termination.

Iowa Code section 232.116(3)(a) permits the court to forgo termination when "[a] relative has legal custody of the child." The mother has legal custody of the child, so section 232.116(3)(a) would permit the court to forgo termination. However, the court is not compelled to apply this exception. *Id.* at 476. When evaluating whether to apply an exception, we still consider the child's best interests. In this instance, the child's best interests make clear that termination is

necessary for the reasons previously stated. We do not apply this permissive exception to forgo termination.

As to the father's bond with the child, section 232.116(3)(c) gives the court discretion to forgo termination when the bond between parent and child is so strong that "termination would be detrimental to the child." The father has the burden of proving this exception by clear and convincing evidence. *See* Iowa Code § 232.116(3)(c) (requiring proof of the exception by "clear and convincing evidence"); *A.S.*, 906 N.W.2d at 475–76 (placing the burden of proving an exception under section 232.116(3) on the parent resisting termination). The father did not meet his burden of establishing a bond of such magnitude by clear and convincing evidence. *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021). While the record does contain evidence of a bond between the father and child, the child requested not to attend visits with the father in more recent months. Further, the father's argument fails to account for his refusal to acknowledge the sexual abuse and the corresponding lack of meaningful treatment that results in him continuing to pose a significant risk to the child. The child's resistance to visits coupled with the father's continued risk to the child causes us to conclude that the father has failed to meet his burden of establishing that severing the parent-child relationship would be more detrimental to the child than preserving it. As a result, we decline to apply this permissive exception to termination as well.

**AFFIRMED.**